(91 South. 56)

Nos. 23577, 23579, 23580.

CHATMAN v. GIDDENS et al. HARDY v. SAME. COMBS v. SAME.

(Nov. 28, 1921. Rehearing Denied Feb. 27, 1922.)

*(Syllabus by Editorial Staff.)*

Mines and minerals ⬳55(8)—Evidence held to show conveyances were induced by fraud and misrepresentations.

Evidence *held* to show that the conveyances of oil, gas, and other minerals were induced by fraud and misrepresentations so as to be void under Rev. Civ. Code, arts. 1819, 1832, 1847.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Separate suits by William Chatman, William Hardy, and Joe Combs against T. K. Giddens and another, consolidated for trial. Judgment for the defendants, in each case, and plaintiffs appeal. Reversed, and judgment rendered for plaintiffs.

J. E. Moore and J. S. Richardson, both of Homer, and Blanchard, Goldstein & Walker, of Shreveport, for appellants.

Breazeale & Breazeale, of Natchitoches, and William C. Barnette, of Shreveport, for appellee Giddens.

David Blackshear, of Homer, and Hudson, Potts, Bernstein & Sholars, of Monroe, for appellee Lay.

DAWKINS, J. Each of the plaintiffs in the above cases, consolidated for the purposes of trial, sue to annul certain contracts affecting mineral rights upon lands owned by them in Claiborne parish. They allege that they transferred to defendants a one-half interest in said minerals, for a consideration of $2 per acre; that at the time of the sale, the said interests were worth $25 per acre; that defendants induced petitioners to sign said transfers upon the representation that the acts conveyed only a one-half interest in the royalties reserved to your petitioners under mineral leases previously executed in favor of other parties; that defendants knew at the time that the aforesaid leases had been given but not recorded, and refused to join therein or recognize the same. They further allege that they were unable to read and understand the said transfers to defendants, but were induced to sign the same solely because of the said fraudulent representations. They pray that said contracts be annulled for lesion and fraud upon the return by petitioners of the price received.

In the cases of William Chatman and William Hardy, defendants admit that they paid the price mentioned "for one-half of plaintiff's one-eighth of oil, gas and other minerals which was a just and adequate price and consideration at the time for one-sixteenth of oil, gas and other minerals so produced." Defendants further admit knowing of the prior leases in these two cases, but deny the charges of fraud and misrepresentation, and aver that it was well understood that plaintiffs were conveying and defendants were purchasing one-half of the interest which had been retained by plaintiffs under said leases, and that this was all that was intended to be conveyed. As to these two plaintiffs, defendants pray that the contracts be modified and reformed so as to recognize their alleged "one-half of one-eighth of the oil, gas and other minerals" under said lands.

In the case of Joe Combs, defendants claim to have acquired, and that it was the intention to convey, one-half interest in all the minerals under the land, just as expressed in the contract, and prayed that plaintiff's demands be rejected.

There was judgment below rejecting the demands of all three plaintiffs, and they have appealed.

### Opinion.

We copy below the contract between Chatman and defendants, which is identical with those in the other two cases, except as to date, description of the property, acreage. sum paid, and name of transferor.

State of Louisiana, Parish of Claiborne.

Know all men by these presents:

That I, William Chatman of Claiborne parish, Louisiana, does (do) by these presents sell, transfer, convey and deliver unto T. K. Giddens and L. R. Lay of Shreveport and Homer, La., the following, to wit:

One-half (½) of the oil, gas and other minerals in and under and that may be produced from the following described land situated in the parish of Claiborne, Louisiana. * * *

This sale is made for the consideration of the sum of two hundred ($200.00) dollars, receipt of which is acknowledged.

Executed at Homer, Louisiana, this 20th day of January, 1919.

This contract and the one with Hardy were executed on the 20th day of January, 1919, but each of them had previously given oil and gas leases upon the same property, which had been filed for record on the 18th and 17th of January, respectively. So, that when defendants came to answer these suits, it was apparent that Chatman and Hardy had reserved only a one-eighth interest, and defendants, as to these lessees, had not ac-

quired (because of prior recordation) one-half of the minerals. On the other hand, in the case of Combs, no lease had been recorded (though one had been given to H. C. Walker, Jr., and others), and if the contract now in contest were held valid, defendants could have and did acquire one-half of the mineral rights; and this is what they claim as to Combs.

It is also noted that, even as to the first two plaintiffs, defendants, in their answer, do not claim that the intention was to convey one-half of the royalties under the leases, but they ask to be adjudged the owners of "one-half of one-eighth of the oil, gas and other minerals" under the property. The difference is that if they acquired only one-half of the royalty rights under the leases already made, if those leases were allowed to lapse, the royalty stipulation would no doubt expire with them; but if defendants were held to be the owners of an interest in the mineral rights themselves, the same would continue whether the property were developed under the leases in question or not, as well as under any subsequent lease.

In the first two cases (Chatman and Hardy), admittedly, the contracts as written are not what was intended by any of the parties; and defendants seek to have them modified in a way to give the greatest interest which could have been acquired under the circumstances of the cases, consistent with the idea of plaintiffs having retained any interest whatever. In other words, plaintiffs did not have the half interest in the minerals to convey, because of the prior leases of which defendants admit they had knowledge, and to have contended that, notwithstanding this fact, the former intended to convey one-half of the whole or three-eighths more than had been reserved, would have been so inconsistent with ordinary reason as to have been untenable even to defendants. However, this condition did not confront defendants as to Combs, for the reason mentioned, that is, because the prior lease had not been recorded, and the contention is that the intention of the parties was properly expressed, notwithstanding the same price per acre was paid to him.

No satisfactory explanation is given by defendants for using the same form of contract in both cases, except that Giddens, in a measure, pleads ignorance of its effect. Yet, in the Combs case, he says the purpose was correctly expressed, the intention being to convey a one-half interest in all the minerals, although his co-vendee, Lay, as a witness, says they only intended to acquire one-half of the royalty even in the case of Combs.

We think the record shows that Giddens was perfectly familiar with and fully understood the difference between the two kinds of contract. He had been associated with a certain firm of attorneys in the city of Shreveport in obtaining oil and mineral leases, who had explained the matter to him fully, and he had told other persons of the difference and asserted that he was not buying royalties but an interest in the minerals. We arise from this record thoroughly convinced that these ignorant negroes were taken advantage of, were led to believe that they were only conveying an interest in the royalties, and that but for the fact that prior leases had been recorded in the first two cases, defendants would to-day be claiming one-half of the mineral rights as to all three. Chatman and Hardy already had a contract of lease under which they had been paid approximately $8 per acre for the land with reservation of one-eighth royalty, and to hold that they knowingly transferred one-half of these rights, including the renewals each year at the same rate to defendants for $2 per acre for an unlimited time in the future, would be to pronounce them fit subjects for an asylum. The record also shows that Combs had, on January 21st, 1919, leased his same 80 acres of land to H. C. Walker, Jr.,

and others for $800 for one year, or at the rate of $10 per acre, but that the defendants' contract executed on January 24, three days later, had been recorded the day following, January 25, while that of Walker et al. was not recorded until February 3d. Hence what we have said with regard to the cases of Chatman and Hardy has equal application to him in so far as the reasonableness of the proposition is concerned.

Consent induced by fraud is no consent at all. R. C. arts. 1819, 1832, 1847.

For the reasons assigned, the judgment in each of these consolidated cases is annulled and set aside; and it is now ordered and decreed that the plaintiffs, William Chatman, William Hardy, and Joe Combs, have and recover judgment against the defendants, T. K. Giddens and L. R. Lay annulling and canceling the contracts given by them on the 20th day of January, 20th day of January, and 24th day of January, 1919, respectively, to the said defendants, and that the same be erased from the conveyance records of Claiborne parish. It is further ordered that the said plaintiffs return to the defendants the sums respectively received by them under said contracts, and that defendants and appellees pay all costs.

O'NIELL, J., takes no part.